Helena WALL, Plaintiff and Appellant,

v.

Lloyd WALL, Defendant and Respondent.

No. 12059.

Supreme Court of South Dakota.

Argued Sept. 12, 1977.

Decided Dec. 30, 1977.

John S. Lovald, of Maher & Lovald, Pierre, for plaintiff and appellant.

Carlyle E. Richards, Aberdeen, for defendant and respondent.

PORTER, Justice.

## CASE SUMMARY

This is an appeal from a judgment of the circuit court granting plaintiff-appellant, Helena Wall, a divorce from defendant-respondent, Lloyd Wall, upon the grounds of extreme mental cruelty. Helena Wall appeals from the division of property and alimony provisions of the judgment. We affirm.

## FACTS

Helena and Lloyd Wall were married August 21, 1970, at Redfield, South Dakota. Helena Wall had been married twice before, and three sons from a previous marriage lived with her. Lloyd Wall had been married once before.

Just prior to their marriage, Lloyd deeded a quarter section of land near Cresbard, South Dakota, to Helena. At the time of the marriage she had $3,000.00 left from a $13,000.00 property settlement given to her by her second husband. She was employed as a cleaning lady, waitress, and kitchen worker at a bowling alley and several restaurants in Redfield. The marriage of Lloyd and Helena was marked by discord and the commencement and dismissal of two divorce actions by Helena. In August, 1973, they entered into a written agreement to live apart for a period of two years. Pursuant to the terms of that agreement Lloyd paid Helena $8,000.00, which was apparently to be applied to pay expenses Helena had incurred in living apart from Lloyd during periods prior to August, 1973. Under the agreement Lloyd conveyed to Helena a quarter section of land near Ipswich, South Dakota, and also paid Helena $450.00 per month for a period of two years to apply on Helena's living expenses in Chicago. For her part, Helena agreed to relinquish any homestead rights she had in the quarter section of land in Faulk County, South Dakota, where Lloyd lived and where the parties had resided during the time they were living together.

When the two-year agreement to live apart expired in August, 1975, Helena returned from Chicago to live with Lloyd in Faulkton. Shortly thereafter she commenced the divorce action from which this appeal arises. On July 20, 1976, the trial court granted Helena a divorce upon the ground of extreme mental cruelty; awarded her $2,400.00 alimony, to be paid in monthly installments of $200.00 for a period of twelve months commencing August 1, 1976; and ordered Lloyd to pay $500.00 on her attorney fees and $1,021.75 for certain doctor and medical bills she had incurred, which were not covered by her insurance.

## ISSUES

The issues presented to us on appeal are:

*Issue One*—Did the trial court abuse its discretion, to the detriment of the wife, in the division of the property and in the alimony provisions adjudged?

*Issue Two*—Was the property division or alimony award based upon matters outside the record, which the trial court improperly considered, to the detriment of the wife?

## DECISION

*Issue One*

■ The previous decisions of this court have held that the trial court has broad discretion in the division of property in a

divorce action. *Pochop v. Pochop,* S.D., 233 N.W.2d 806 (1975); and *Plageman v. Plageman,* 79 S.D. 221, 110 N.W.2d 337 (1961). When dividing the money or property of the parties the trial court must make a fair and just award considering all of the material factors. *Kressly v. Kressly,* 77 S.D. 143, 87 N.W.2d 601 (1958).[1] The principal factors to be considered by the court in making an equitable division of the property are as follows:

"The duration of the marriage, the value of the property of each, their ages, their health and competency to earn, the contribution of each to the accumulation of the property and the faults and circumstances leading up to the divorce. [citations omitted]" *Tyler v. Tyler,* S.D., 233 N.W.2d 804, 805 (1975).

In order to review the distribution of the property in the present case we will apply the factors listed above to the facts before us.

*Duration of the marriage*—Helena and Lloyd were married August 21, 1970, and the divorce was granted July 20, 1976. During that time they only lived together about fifteen months. No children were born of the marriage.

*Value of the property of each*—The trial court found that at the time of the trial Lloyd had accumulated the following property:

| | | |
|---|---|---|
| 1. | One quarter section of land in Faulk County, South Dakota ($275.00 per acre) | $ 44,000.00 [2] |
| 2. | Equity in house in St. Paul, Minn. | 15,000.00 |
| 3. | Fifty cows with calves | 17,500.00 |
| 4. | Farm machinery | 11,300.00 |
| 5. | 5,000 bushels of grain ($1.70 per bushel) | 8,500.00 |
| 6. | Life insurance policy (cash value) | 2,500.00 |
| 7. | Cash | 5,000.00 |
| 8. | Miscellaneous (1966 automobile and 1967 pickup) | 2,500.00 |
| | Total | $106,300.00 |

Lloyd deeded 720 acres of land in Faulk County to his brother, without consideration, in 1973. The trial court found that Lloyd receives the income from the 720 acres of land, but did not find as to the amount received.[3] Lloyd also testified that he receives $400.00 to $500.00 rent per month from his St. Paul property and would be receiving $250.00 per month in social security payments.

The trial court found that at the time of the trial Helena had already received the following property from Lloyd:

| | | |
|---|---|---|
| 1. | Two quarter sections of South Dakota farmland | $60,000.00 [4] |
| 2. | $450.00 per month as support from September 1, 1973, to August, 1975 | 10,800.00 |
| 3. | $300.00 per month as support from December, 1975, to June, 1976 | 2,100.00 |
| | Total | $72,900.00 |

---

1. SDCL 25-4-44 provides:
 Where a divorce is granted for an offense of either husband or wife, the courts shall in such action have full power to make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. In making such division of the property the court shall have regard for equity and the circumstances of the parties.

2. The trial court made no finding as to the separate value of items one through eight of Lloyd's property. We accept the values which Helena assigned to those items in her brief on appeal and confirmed at oral argument.

3. Regarding this land, we understand Helena's claim to be that its income-producing capacity was a valuable asset to Lloyd, even though he no longer had title. Helena proposed no finding as to the money value of such asset nor as to the net annual income to Lloyd from the land.

4. Helena commenced this divorce action in November, 1975. In May, 1976, she transferred these two quarter sections of land to her sons. We consider this property as hers for purposes of reviewing the property division; she may not give away assets received from Lloyd and then be heard to claim she has not received enough.

As noted earlier, at the time of the August, 1973, written agreement between the parties Lloyd paid Helena $8,000.00. The trial court also found that from the time of the marriage of these parties in 1970, until 1974, Lloyd supported Helena's three children by her previous marriage, and that since 1974, Helena has received approximately $75.00 per month child support from a previous husband.

After considering all of the transactions between Lloyd and Helena, the trial court made the following award to Helena:

| | | |
|---|---|---|
| 1. | $200.00 per month alimony for a period of 12 months commencing August 1, 1976 | $2,400.00 |
| 2. | Payment of Helena's medical bills and charges not covered by insurance | 1,021.75 |
| 3. | Payment on Helena's attorney fees | 500.00 |
| | Total | $3,921.75 |

Therefore, the total amount of money and property received by Helena from Lloyd, including the award of the trial court in the divorce action, is $84,821.75.

*Ages, health, and competency of each to earn* —Helena is 45 years old, and Lloyd is 47. Both parties are disabled. The trial court found that Helena suffers from a neck and back injury,[5] but lacks two quarters for the purpose of applying for social security disability payments, and Lloyd is totally, permanently disabled by reason of multiple sclerosis and qualifies for $250.00 per month in social security benefits.

In May, 1976, Helena transferred the two quarter sections of land, which Lloyd had given her, to her sons. She receives approximately $2,220.00 net income per year from that land.

*Contribution of each to the accumulation of property* —The trial court found that most of Lloyd's property was accumulated by him prior to his marriage to Helena, and Helena concedes in her brief that there is no dispute over the fact that little was added in terms of property accumulation during the term of the marriage.

*Faults and circumstances leading up to the divorce* —The trial court found that Lloyd's "conduct toward Helena [had] been such in terms of acts and deeds as to cause [Helena] grievous mental suffering," and granted her an absolute decree of divorce from him for extreme mental cruelty.

Based upon the analysis of the principal factors to be considered in making an equitable division of the property, we conclude that the trial court did not abuse its discretion in the alimony provision and division of property made in this case. Lloyd and Helena actually lived together for only fifteen months. Lloyd had accumulated most of his property prior to the marriage. At the time of the trial he had $106,300.00 in property plus the annual income from the 720 acres of Faulk County land owned by his brother. By the time of trial Lloyd had already given Helena $60,000.00 in land, a lump sum of $8,000.00, plus $12,900.00 in support payments during times they lived apart. Helena at the time of trial was disabled by her neck and back injury, but Lloyd was totally and permanently disabled by multiple sclerosis. In light of these considerations we find that the $3,921.75 award by the trial court to Helena was neither inequitable nor unreasonable. Although the divorce was Lloyd's fault,[6] he had already given Helena such a large amount of financial support that the award to Helena under the judgment was clearly within the

**5.** On appeal Helena argues that Lloyd caused her disability. The refusal of the trial court to so find is supported by the record.

**6.** SDCL 25–4–45.1, effective July 1, 1976, provides:

Fault shall not be taken into account with regard to the awarding of property . . .

except as it may be relevant to the acquisition of property during the marriage . . .

This action was tried in June, 1976, and judgment was entered in July, 1976. It is not clear whether the trial court applied this statute; if not, Helena suffered no prejudice since the statute would benefit Lloyd under the facts of this case.

sound discretion of the trial court. SDCL 25–4–44.[7]

"An appeals court is in a position quite removed from the personalities and the setting of the marriage under attack and must necessarily rely on the judgment of the trial judge who has the benefit of hearing and seeing the principal parties . . . ." *Pochop v. Pochop,* S.D., 233 N.W.2d 806, 807 (1975). Appellant in the case at bar has failed to demonstrate on the record before us an abuse of discretion by the trial court. She bears this burden on her appeal, and where she fails, we, as an appellate court, may not interfere with the judgment rendered. *Davis v. Kressly,* 78 S.D. 637, 641–42, 107 N.W.2d 5, 8 (1961).

*Issue Two*

 Was the property division or alimony award based upon matters outside the record, which the trial court improperly considered, to the detriment of the wife?

Finding of Fact number eight is as follows:

That plaintiff [Helena] might qualify for social security benefits by participating in the management of the real estate given her by Defendant [Lloyd]; that Defendant has a college degree in agriculture and might assist Plaintiff in this respect in the coming year; that, in this way, Plaintiff might satisfy the social security requirements and then apply for disability benefits if she is disabled.

Helena claims the court went outside the record to obtain information about Helena's potential entitlement to social security benefits. Whether the court could judicially notice the provisions of the federal Social Security Act under SDCL 19–8–1, and whether the court could inform itself of the

federal statute by consulting the local social security office, under SDCL 19–8–3, we need not decide. The complete findings, one through twelve, considered together, afford us no basis to conclude that the property and alimony result was reached because of what is no more than passing speculation, in finding eight, concerning Helena's possible eligibility for social security at some future time. Helena seeks to buttress her argument on this issue by referring to a statement in the memorandum opinion of the trial court concerning the possibility that Helena might become eligible for social security benefits. In our review of the appeal record we consider the findings of fact, not the memorandum opinion. It is now settled in this state that the memorandum opinion is not material and is of no binding force and effect as a matter of law either upon the trial judge himself or anyone else. *Christiansen v. Strand,* 82 S.D. 416, 420, 147 N.W.2d 415, 417 (1966).

While we do not reach the question of whether evidence outside the record was improperly considered, nonetheless, the following statement from an earlier case of this court is pertinent:

This court has usually held that where there is sufficient evidence properly before the court [in a trial to the court without a jury] to sustain its findings the fact that improper evidence was received will not be considered reversible error. That presumption is that the trial court did not rely upon improper evidence. *Sabbagh v. Pro. & B'Men's Life Ins. Co.,* 79 S.D. 615, 630, 116 N.W.2d 513, 521 (1962). *See also Hipple v. Strohbehn,* 44 S.D. 102, 182 N.W. 535 (1921).

We overrule Helena's contentions under Issue Two.

---

7. We are aware that the property divisions and support provisions in *Hanson v. Hanson,* S.D., 252 N.W.2d 907 (1977), *Vaughn v. Vaughn,* S.D., 252 N.W.2d 910 (1977), and *Guindon v. Guindon,* S.D., 256 N.W.2d 894 (1977), appear to be much more favorable to the wife than the award in the present case, but we find those cases distinguishable. In *Hanson* and *Guindon* the husband and wife had been married twenty-eight years, and in *Vaughn,* twenty-six years. The child support payments fixed in *Hanson* and *Guindon* (the only child involved in

*Vaughn* had reached his majority and was emancipated) were established to support children born of those marriages. In all three cases cited the wives actively assisted their husbands in amassing their personal wealth. In contrast, we have here a husband and wife who lived together fifteen months, the children involved are all from one of the wife's previous marriages, and the property involved was essentially accumulated by Lloyd prior to the marriage.

## CONCLUSION

The division of property was within the discretion of the trial court under SDCL 25–4–44. The alimony provisions as to the wife, Helena, were within the discretion of the trial court under SDCL 25–4–41. The findings of fact have ample support in the record. *Rapid City v. Hoogterp,* 85 S.D. 176, 182, 179 N.W.2d 15, 18 (1970). The judgment of the trial court is therefore affirmed.

All the Justices concur.